UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIE LYNN MATTOX, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-CV-01341 |
| v. | (MEHALCHICK, M.J.) |
| KILOLO KIJAKAZI, | |
| Defendant. | |

**MEMORANDUM**

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Christie Lynn Mattox ("Mattox")'s claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. (Doc. 1). The parties consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be vacated.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On May 6, 2020, Plaintiff Mattox protectively filed applications for Title II and Title XVI benefits alleging disability beginning September 2, 2015, due to small fiber neuropathy, bilateral cubital/carpal tunnel, migraines, back and hip issues, chronic idiopathic hives, irritable bowel syndrome, and interstitial cystitis. (Doc. 15-2, at 17, 20). Mattox amended her

alleged disability onset date to March 6, 2019, making the relevant period in this case from March 6, 2019, the new alleged onset date, through February 2022, the date of the ALJ's decision. (Doc. 15-2, at 17). The Social Security Administration initially denied Mattox's application on August 26, 2020, and upon reconsideration on November 17, 2020, prompting Mattox's request for a hearing, which Administrative Law Judge ("ALJ") Theodore Burock held on April 19, 2021. (Doc. 15-2, at 17-18, 59). A supplemental hearing was held on October 18, 2021. (Doc. 15-2, at 35). In a written opinion dated February 1, 2022, the ALJ determined that Mattox was not disabled and therefore not entitled to the benefits sought. (Doc. 15-2, at 14). On July 13, 2022, the Appeals Council denied Mattox's request for review. (Doc. 15-2, at 2).

On August 29, 2022, Mattox filed the instant action. (Doc. 1). The Commissioner responded on November 7, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 14; Doc. 15). The parties then filed their respective briefs, with Mattox alleging three errors warranted reversal or remand. (Doc. 16; Doc. 19; Doc. 20).

II. **STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement,

a claimant must have a severe physical or mental impairment[1] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

    A.  ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[2] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[2] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Mattox is disabled, but whether the Commissioner's finding that Mattox is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### III. THE ALJ'S DECISION

In a decision dated February 1, 2022, the ALJ determined Mattox "has not been under a disability, as defined in the Social Security Act, from March 6, 2019, through the date of this decision." (Doc. 15-2, at 27). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920(a). At the onset, the ALJ determined that Mattox meets the insured status requirements of the Social Security Act through June 30, 2021. (Doc. 15-2, at 20).

#### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. §§

404.1572, 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574, 416.974. The ALJ determined Mattox "has not engaged in [SGA] since March 6, 2019, the alleged onset date." (Doc. 15-2, at 20). Thus, the ALJ's analysis proceeded to step two.

 B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. §§ 1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "small fiber neuropathy, bilateral upper extremity disorder, and headaches." (Doc. 15-2, at 20). The ALJ also noted non-severe impairments of: irritable bowel syndrome, restless leg syndrome, hyper/hypothyroidism, back issues, bilateral carpal tunnel syndrome, chronic idiopathic hives, urticaria, and anxiety/depression. (Doc. 15-2, at 20-22).

 C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925;

416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ determined that none of Mattox's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 15-2, at 22). Specifically, the ALJ considered Listings 1.18 (abnormality of a major joint(s) in any extremity); 8.04 (chronic infections of the skin or mucous membranes); and 11.14 (peripheral neuropathy). (Doc. 15-2, at 22-23).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Mattox alleged that her impairments caused the following symptoms: persistent back, hip, leg, and arm pain; difficulty with all household chores; needing help with some personal care tasks; numbness in her upper extremities; frequent migraines. (Doc. 15-2, at 23-24). After examining her statements and the medical evidence, the ALJ found that Mattox's impairments could reasonably be expected to cause the alleged symptoms, Mattox's statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 15-2, at 24). The ALJ then went on to detail Mattox's medical records and treatment history. (Doc. 15-2, at 24-26).

Considering all evidence in the record, the ALJ determined that Mattox had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b),"[3] subject to the following non-exertional limitations:

> [Mattox] is able to perform routine, repetitive tasks; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; frequently use upper extremities for all functions bilaterally; no concentrated exposure to extreme cold, heat, wetness, humidity, noise, vibration, fumes, odors, dust, gases, or poor ventilation; and no ladders, ropes, scaffolding, heights, and machinery.

(Doc. 15-2, at 23).

E.  STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. §§ 404.1565, 416.965.

---

[3] The limitation to "light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job will fall under this category if it requires lifting little weight, yet a good deal of walking or standing, or mostly sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). An individual considered capable of performing a full range of light work must be able to do substantially all of these activities. 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ determined Mattox is unable to perform past relevant work. (Doc. 15-2, at 26). The ALJ noted past relevant work as an insurance agent, but the exertional requirements of each exceeded Mattox's RFC. (Doc. 15-2, at 26). Thus, the ALJ proceeded to step five of the sequential analysis.

F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Mattox was 38 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. §§ 404.1563, 416.963. (Doc. 15-2, at 26). The ALJ also noted that Mattox "has at least a high school education" as considered in 20 C.F.R. §§ 404.1564, 416.964. (Doc. 15-2, at 26-27). The ALJ determined that upon consideration of these factors, Mattox's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 15-2, at 27). The ALJ specifically identified occupations of information clerk, marker, and office helper, which are occupations with open positions ranging from 71,000 to 141,000 nationally. (Doc. 15-2, at 27). As a result of this analysis, the ALJ determined that Mattox was not disabled and denied her applications for benefits. (Doc. 15-2, at 27).

IV. **DISCUSSION**

Mattox advances three arguments on appeal. First, Mattox asserts that "[t]he ALJ's review of the state agency consulting physicians does not comport with the record calling into question whether the ALJ's [RFC] assessment is based on substantial evidence or whether it is even based on the actual record before him." (Doc. 16, at 8). Second, Mattox argues that "[t]he ALJ failed to discuss or consider [Mattox]'s new diagnoses made after the state agency consulting physicians rendered their opinions; given the deterioration of [Mattox]'s condition, the ALJ erred in failing to order an updated medical opinion." (Doc. 16, at 11). Third, Mattox argues that "[t]he ALJ was not properly appointed and thus, lacked the authority to hear and decide [Mattox]'s case; Nancy Berryhill's purported ratification of the ALJ's appointment was ineffective." (Doc. 16, at 16). In response, the Commissioner contends the Commissioner's decision should be affirmed because substantial evidence supports the ALJ's determination that Mattox was not disabled within the meaning of the Social Security Act. (Doc. 19, at 1).

    A. THE ALJ ERRED IN THEIR EVALUATION OF OPINION EVIDENCE.

Mattox avers that the ALJ's recitation and summary of the opinions of state agency consulting physicians, Glenda Ann Cardillo, M.D. ("Dr. Cardillo"), and Lelwellyn Anone Raymundo, M.D. ("Dr. Raymundo"), does not accurately reflect the limitations in the record. (Doc. 16, at 8). Mattox argues that the ALJ failed to include all relevant limitations from the opinions of Dr. Cardillo and Dr. Raymundo and failed to provide an explanation for these omissions. (Doc. 16, at 9). In opposition, the Commissioner asserts that the ALJ's RFC assessment accounted for all of her limitations that were reasonably consistent with the evidence of record and, thus, it permits meaningful judicial review that does not warrant

remand. (Doc. 19, at 29). The Commissioner argues that the ALJ's analysis contained an "inadvertent misstatement and/or omission," and that the ALJ adopted the state agency consulting physician opinions in their totality. (Doc. 19, at 29-37). In response, Mattox argues that the Court may not speculate as to what the ALJ intended to write in his opinion and that there are "inadequacies in the ALJ's analysis which frustrate meaningful review." (Doc. 20, at 3-4) (quotations omitted).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; 20 C.F.R. §§ 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds

substantial evidence does not support the ALJ's RFC determination as it pertains to the opinions of Dr. Cardillo and Dr. Raymundo.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121(citations omitted); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on

issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[4] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404,1520c(b), 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[4] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Here, the ALJ determined that the opinions of Dr. Cardillo and Dr. Raymundo are "persuasive." (Doc. 1-5, at 25). In summarizing the opinions of these state agency consultants, the ALJ stated:

> On each occasion, the medical consultants found that the claimant could perform light work with reduced stand/walk of 4 hours in an 8-hour workday; frequent push/pull bilaterally; occasional handle and finger bilaterally; occasional postural activities, except no ladders, ropes, or scaffolds; and avoid

> concentrated exposure to extreme temperatures, wetness, humidity, noise, vibration, pulmonary irritants, and hazards (Exhibits B3A; B5A; B7A; B9A).

(Doc. 15-2, at 25).

The ALJ found that these opinions "are supported by a thorough review of the evidence with citations and explanations for [Mattox]'s limitations up to the date of evaluation." (Doc. 15-2, at 25). The ALJ explained that "the medical findings are generally consistent with the evidence of record, including mild imaging study findings and physical examination findings noting decreased shoulder range of motion, but 4-5/5 motor strength, generally normal gait, and negative Romberg's test." (Doc. 15-2, at 25). The ALJ noted that Dr. Cardillo and Dr. Raymundo "found [Mattox]'s headaches a non-severe impairment but did provide environmental restrictions based on this condition," which is consistent with the ALJ's finding that Mattox's headaches is a severe medically determinable impairment resulting in certain environmental limitations. (Doc. 15-2, at 25).

Mattox argues that the ALJ's summary of the consultants' opinions is "factually incorrect," and "inherently unreviewable." (Doc. 16, at 9-10). To support her claims, Mattox cites *Hines v. Colvin*, No. 3:14-CV-2139, 2015 WL 8489970, at *13 (M.D. Pa. Dec. 9, 2015), a case in which the Court vacated and remanded the Commissioner's decision because the ALJ assigned great weight to a particular medical opinion, finding that opinion consistent with the record, but failed to provide an explanation for certain RFC limitation omissions.

Mattox correctly notes that contrary to the ALJ's recitation of the consultants' opinions, the consultants limited her to 6 hours of standing/walking, not 4 hours, and the consultants limited her to frequent use of bilateral upper extremities, not occasional handling/fingering. (Doc. 15-3, at 33-34, 62-63). Despite finding that the consultants'

opinions were persuasive, the ALJ did not include any standing/walking limitations and only provided limitation to frequent use of Mattox's upper extremities for all functions bilaterally. (Doc. 15-2, at 23). Moreover, the transcript reflects that the hypothetical questions the ALJ presented to the vocational expert did not include any discussion of such limitations.

While the ALJ was not bound by the consultants' opinions on Mattox's limitations, and was not required to adopt all of the limitations, he was required to explain his basis for doing so. The Court acknowledges that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Evanitus v. Berryhill*, No. 3:16-CV-845, 2018 WL 1465276, at *11 (M.D. Pa. Feb. 28, 2018), *report and recommendation adopted,* No. 3:16-CV-845, 2018 WL 1453103 (M.D. Pa. Mar. 23, 2018) (quoting *Moua v. Colvin*, 541 F. App'x 794, 798 (10th Cir. 2013)). Though "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination," *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009), it is clear in this context that:

> Cases considering the harmless error doctrine in the context of social security appeals also strongly caution that harmless error analysis should be applied sparingly, and only in extraordinary cases. Thus, "we apply harmless error analysis cautiously in the administrative review setting." *Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). It is also clear that, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount [some evidence] and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.' *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir. 1996)." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). Furthermore, "the district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct.

454, 87 L.Ed. 626 (1943)." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

*Evanitus*, 2018 WL 1465276, at *11 (quoting *Peak v. Colvin*, No. 1:12-CV-1224, 2014 WL 888494, at *5 (M.D. Pa. Mar. 6, 2014)).

The Commissioner argues that "the ALJ 'meant to' limit Mattox to a job requiring standing or walking, off and on, for 6 hours of an 8-hour day." (Doc. 19, at 35). In addition, the Commissioner asserts Mattox is not entitled to remand "because the vocational expert also alternatively identified a significant number of *sedentary* jobs that an individual with Mattox's vocational profile and RFC could perform." (Doc. 19, at 36) (emphasis in original). Although the Commissioner's assertions may be correct, the ALJ's misstatement and failure to include walking/standing limitations without any explanation cannot be considered harmless and the Court finds that remand is necessary. The RFC in this case undermines the confidence that the Court has in the accuracy of the vocational expert's testimony and the jobs he identified that Mattox can perform, as he relied on a hypothetical question that did not provide for any walking/standing limitations and only provided limitation to frequent use of her upper extremities for all functions bilaterally. (Doc. 15-2, at 48). The hypothetical question posed to the vocational expert must include all of a claimant's functional limitations which are supported by the record. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210,218 (3d Cir. 1984). A hypothetical that omits limitations is defective, and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez*, 372 F.3d at 553-55. Furthermore, the Court may not speculate as to whether the vocational expert's testimony was appropriately considered for purposes of determining disability because it is unclear whether the ALJ's hypothetical question accurately portrayed Mattox's physical

limitations. *See Podedworny*, 745 F.2d at 218 (A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations.); *Chrupcala*, 829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.").

Accordingly, the Court finds that because the ALJ failed to adequately explain Dr. Cardillo's and Dr. Raymundo's opinions, and which portions of their opinions he rejected, the final decision denying Mattox's claim is not supported by substantial evidence. Because the Court finds that the case must be remanded for further proceedings, it is unnecessary to address Mattox's remaining arguments. To the extent that any error exists, it may be remedied on remand.

V. **REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits are appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the record.

Yet, while case law calls for a remand and further proceedings by the ALJ, the final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Nothing in this Opinion should be deemed as expressing a view on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand. Thus, upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

## VI. CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Mattox disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). Further, the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: September 12, 2023

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**